**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SVETLANA SHOLOPA and MILICA MILOSEVIC, on behalf of themselves and all others similarly situated, <br><br>             Plaintiff, <br><br>     v. <br><br> TURK HAVA YOLLARI A.O., INC. (d/b/a Turkish Airlines, a foreign corporation), and TURKISH AIRLINES, INC., a New York Corporation <br><br>             Defendant. | 20-cv-03294 (ALC) |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Steve M. Dollar
David B. Schwartz
Sonia H. Lee
M. Hannah Koseki
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, New York 10019
Tel.: (212) 318-3000
Fax: (212) 318-3400
steve.dollar@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com
sonia.lee@nortonrosefulbright.com
hannah.koseki@nortonrosefulbright.com

*Attorneys for Defendants Türk Hava Yollari A.O. and Turkish Airlines, Inc.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................. 3

    A.    Turkish Airlines' Response to COVID-19 ................................ 3

    B.    Turkish Airlines' Conditions of Carriage and Terms of Use ................... 3

    C.    Plaintiff Sholopa's Allegations ................................................ 6

    D.    Plaintiff Milosevic's Allegations ............................................ 7

    E.    The Department of Transportation Enforcement Notices ........................ 7

ARGUMENT .................................................................................................... 8

    I.    PLAINTIFF SHOLOPA LACKS STANDING UNDER ARTICLE III BECAUSE SHE FAILED TO ALLEGE AN INJURY IN FACT...................... 8

    II.    PLAINTIFF MILOSEVIC AGREED TO THE EXCLUSIVE JURISDICTION OF THE ISTANBUL/BAKIRKÖY COURTS ...................... 11

    III.    PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED UNDER RULE 12(b)(6) .......................................... 14

        A.    Plaintiffs' Claim Is Preempted by the Airline Deregulation Act ............. 14

            1.    Plaintiffs' Breach of Contract Claim Is Preempted by the ADA Because It Relates to Turkish Airlines' "Prices" and "Services" .................................................................... 14

            2.    The Narrow Exception in *Wolens* Does Not Apply to Plaintiffs' Claim ...................................................... 16

        B.    Plaintiffs' Breach of Contract Claim Should be Dismissed Under Rule 12(b)(6) For Failure to State a Claim .............................. 17

            1.    Turkish Airlines did not Breach its Conditions of Carriage .......... 18

            2.    Plaintiffs Cannot Rely on the Non-Binding DOT Notices to Support Their Breach of Contract Claim.................... 20

CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06-MD-1775(JG)(VVP), 2008 WL 5958061 (E.D.N.Y. Sept. 26,
  2008) ..................................................................................................................15

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
  520 F.3d 218 (2d Cir. 2008)..............................................................................15

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) ..........................................................................................20

*American Airlines, Inc. v. Wolens*,
  513 U.S. 219 (1995) ..................................................................................... 16, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................14

*Buck v. Am. Airlines, Inc.*,
  476 F.3d 29 (1st Cir. 2007) ...............................................................................15

*Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*,
  537 F. Supp. 2d 546 (S.D.N.Y.), *aff'd*, 572 F. 3d 76 (2d Cir. 2009) ...............18

*Castanares v. Deutsche Lufthansa AG*,
  No. 20-CV-4261(MWF)(MRW), 2020 WL 6018807 (C.D. Cal. Oct. 9,
  2020) ............................................................................................................ 10, 21

*Cfirstclass Corp. v. Silverjet PLC*,
  560 F. Supp. 2d 324 (S.D.N.Y. 2008).................................................................11

*Cordell v. McGraw-Hill Companies, Inc.*,
  No. 12 CIV. 0637 ALC RLE, 2012 WL 5264844 (S.D.N.Y. Oct. 23,
  2012), *aff'd*, 525 F. App'x 22 (2d Cir. 2013) ..................................................19

*D.H. Blair & Co. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006)..................................................................................12

*Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*,
  No. 5:20-CV-767-JGB-SP, 2020 WL 5625740 (C.D. Cal. Sept. 17, 2020)............... 16, 21

*Epstein v. JPMorgan Chase & Co.*,
  No. 13 CIV. 4744 KPF, 2014 WL 1133567 (S.D.N.Y. Mar. 21, 2014) ...................... 8, 9

*Fernandez v. Zoni Language Centers, Inc.*,
No. 15-CV-6066 (PKC), 2016 WL 2903274 (S.D.N.Y. May 18, 2016),
*aff'd*, 858 F.3d 45 (2d Cir. 2017)................................................................................5

*Giuffre v. Delta Air Lines, Inc.*,
No. 10-CV-1462 DLI MDG, 2012 WL 3988981 (E.D.N.Y. Sept. 11,
2012) ............................................................................................................................22

*Hekmat v. U.S. Transportation Sec. Admin*,
247 F. Supp. 3d 427 (S.D.N.Y. 2017)...........................................................14, 15, 17

*Hughes v. Southwest Airlines Co.*,
961 F.3d 986 (7th Cir. 2020)................................................................................17, 20

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
62 F.3d 69 (2d Cir. 1995) .............................................................................................7

*Kalick v. Northwest Airlines Corp.*,
372 F. App'x 317 (3d Cir. 2010) ................................................................................20

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*,
424 F.3d 195 (2d Cir. 2005).......................................................................................19

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012)............................................................................................9

*Mapp-Leslie v. Norwegian Airlines*,
No. 19-CV-7142 (PKC), 2020 WL 264919 (E.D.N.Y. Jan. 17, 2020) ......................20

*Maree v. Deutsche Lufthansa AG*,
No. 8:20-CV-885(MWF)(MRW), 2020 WL 6018806 (C.D. Cal. Oct. 7,
2020) .....................................................................................................................10, 21

*Martin v. United Airlines, Inc.*,
No. 16-CV-1042, 2017 WL 3687347 (W.D. Okla. Apr. 18, 2017), *aff'd*,
727 F. App'x 459 (10th Cir. 2018) ............................................................................15

*McGarry v. Delta Air Lines, Inc.*,
No. 18-CV-9827(MWF), 2019 WL 2558199 (C.D. Cal. June 18, 2019),
*aff'd*, 812 F. App'x 625 (9th Cir. 2020) .....................................................................16

*Melendez v. ONE Brands, LLC*,
No. 18-CV-06650(CBA)(SJB), 2020 WL 1283793 (E.D.N.Y. Mar. 16,
2020) .....................................................................................................................9, 11

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ...............................................................................................14, 15

*New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*,
   121 F.3d 24 (2d Cir. 1997).........................................................................12

*Pena v. British Airways, PLC (UK)*,
   No. 18-CV-6278(LDH)(RML), 2020 WL 3989055 (E.D.N.Y. Mar. 30,
   2020) .................................................................................................. 15, 16

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007)...............................................................11, 13

*Schlesinger v. Reservists Comm. to Stop the War*,
   418 U.S. 208 (1974) ..................................................................................9

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ..............................................................................9

*Statland v. Am. Airlines, Inc.*,
   998 F.2d 539 (7th Cir. 1993)....................................................................15

*Synovus Bank of Tampa Bay v. Valley Nat'l Bank*,
   487 F. Supp. 2d 360 (S.D.N.Y. 2007).......................................................21

*TradeComet.com LLC v. Google, Inc.*,
   693 F. Supp. 2d 370 (S.D.N.Y. 2010), *aff'd in part*, 647 F.3d 472 (2d Cir.) ....5, 11, 12, 13

*Valley v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   No. 19-CV-7998 (VEC), 2020 WL 2907676 (S.D.N.Y. June 3, 2020) ..........................12

## Rules and Statutes

49 U.S.C. § 41712 ......................................................................................3, 21

49 U.S.C. § 41713(b)(4)(A) ..............................................................................14

Federal Rule of Civil Procedure 12(b)(1) ......................................................1, 5, 9, 11

Federal Rule of Civil Procedure 12(b)(3) ........................................................1, 5, 11

Federal Rule of Civil Procedure 12(b)(6) .....................................................1, 7, 14, 17

Defendants Türk Hava Yollari A.O. and Turkish Airlines, Inc. (collectively, "Turkish Airlines") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the Consolidated Class Action Complaint ("Consolidated Complaint") of Plaintiffs Svetlana Sholopa ("Plaintiff Sholopa") and Milica Milosevic ("Plaintiff Milosevic") (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(1), (3), and (6).

## PRELIMINARY STATEMENT

The COVID-19 pandemic had an unprecedented impact on the airline industry. By March 2020, government travel restrictions and airport closures forced airlines across the globe to suspend many of their domestic and international flights. Turkish Airlines, like many airlines, worked meticulously to adjust its flight schedules in response to the rapidly developing health crisis. To assist its customers during this extraordinary time, Turkish Airlines' policy is to allow passengers who purchased a ticket before March 20, 2020 for travel through December 31, 2020 to make changes to tickets with zero change fees and, upon request, to issue refunds for tickets purchased for flights canceled because of the COVID-19 pandemic.

Plaintiffs Svetlana Sholopa and Milica Milosevic brought two separate putative class actions for breach of contract, alleging that Turkish Airlines failed to provide prompt refunds for the non-refundable tickets they purchased. The Court consolidated the actions on October 13, 2020, and Plaintiffs filed their Consolidated Complaint on October 23, 2020. The Consolidated Complaint should be dismissed with prejudice.

First, this Court does not have jurisdiction over Plaintiff Sholopa's claim because she has not suffered an injury in fact and therefore lacks standing under Article III of the Constitution. Plaintiff Sholopa received a full refund on June 22, 2020, four months prior to filing the Consolidated Complaint, and has plead no damages beyond the full refund price of her ticket.

Accordingly, Plaintiff Sholopa cannot establish standing. Nor can she represent the putative class, which is limited to passengers who were "not refunded." Thus, her claim should be dismissed.

Second, Plaintiff Milosevic's claim should be dismissed because she agreed to the exclusive jurisdiction of the Istanbul/Bakırköy Courts. Plaintiff Milosevic purchased her non-refundable tickets through Turkish Airlines' website and agreed to the provisions in Turkish Airlines' Terms of Use. Turkish Airlines' Terms of Use contains a forum selection clause stating that all disputes or claims arising out of the use of Turkish Airlines' website must be brought in the Istanbul/Bakırköy courts. Thus, Plaintiff Milosevic's claim should be dismissed.

Third, Plaintiffs' claim, brought individually and on behalf of those similarly situated, should be dismissed because it is preempted by the Airline Deregulation Act (the "ADA"). Turkish Airlines' refund and cancellation policies relate to its "prices" and "services" and are expressly preempted under the ADA. The narrow exception for breach of contract arising from an airline's self-imposed contractual undertakings is inapplicable because Turkish Airlines has complied with its Conditions of Carriage. In an apparent effort to avoid preemption, Plaintiffs attempt to invoke two non-binding Department of Transportation ("DOT") Enforcement Notices related to refunds for passengers whose flights were canceled because of COVID-19. However, because the DOT notices are not part of Turkish Airlines' Conditions of Carriage and there is no evidence Turkish Airlines intended to adopt the DOT notices as contractual obligations, Plaintiffs' claim does not fall under the narrow exception to ADA preemption, and thus, Plaintiffs cannot circumvent the preemption of their claim.

Finally, Plaintiffs fail to state a viable breach of contract claim because, although Turkish Airlines has adopted a policy to provide requested refunds for tickets purchased for flights canceled because of the COVID-19 pandemic, under the clear terms of Turkish Airlines'

Conditions of Carriage, Turkish Airlines is not obligated to provide cash refunds for the cost of non-refundable tickets, can satisfy its obligations through other means, and is not obligated to provide refunds within a set time period. Plaintiffs' reliance on the non-binding DOT notices is misplaced. Neither the DOT nor 49 U.S.C. § 41712, the statute the DOT notices are purportedly based on, create a private right of action. Further, no authority exists to support Plaintiffs' apparent contention that the DOT's non-binding guidance can displace or re-write Turkish Airlines' Conditions of Carriage. Having already had several opportunities to amend their complaints, Plaintiffs' claim should be dismissed with prejudice.

## STATEMENT OF FACTS

### A.   Turkish Airlines' Response to COVID-19

The COVID-19 global pandemic and resulting government travel restrictions had an unprecedented impact on commercial air travel. In response to the pandemic, and in an effort to protect the public, Turkish Airlines temporarily suspended all of its international flights. In the interim, Turkish Airlines has worked to provide flexible travel opportunities for its passengers. Turkish Airlines' passengers who purchased a ticket before March 20, 2020 for travel through December 31, 2020 are permitted to make changes to tickets without incurring any change fees. In addition, Turkish Airlines' policy is to issue refunds requested for tickets purchased for flights canceled because of the COVID-19 pandemic.

### B.   Turkish Airlines' Conditions of Carriage and Terms of Use

Turkish Airlines' Conditions of Carriage constitutes a contract between Turkish Airlines and its passengers. Article 3.1.1 of Turkish Airlines' Conditions of Carriage states that "[a] Ticket constitutes evidence of the contract of carriage between the Carrier and the Passenger named on the ticket." (Cons. Compl., Ex. A § 3.1.1). Article 1 defines a "Ticket" as "[a] Passenger Ticket and Baggage Check document or Electronic Ticket issued by the Carrier or one of the Carrier's

Authorized Agents which contains the Conditions of Carriage, warnings, and the Flight and Passenger Coupons." (*Id.* § 1).

Under Turkish Airlines' Conditions of Carriage, Turkish Airlines has no obligation to issue refunds for non-refundable tickets. Article 3.1.5 provides, in part: "NON-REFUNDABLE TICKETS ... may include restrictions on various reservation alterations and non-refundability of discounted tickets. The refund and change rules which apply to these tickets can be found in the Ticket's fare regulations." (*Id.*).

Turkish Airlines' Conditions of Carriage allows the airline to choose from three options to address a flight cancellation or delay. Article 10.2 provides that, if Turkish Airlines cancels or delays a flight due to circumstances outside of its control, it may either (i) place the passenger on an alternate flight, (ii) provide the passenger with alternate transportation, or (iii) issue a refund:

> If, due to circumstances beyond its control, the Carrier cancels or delays a flight ... the Carrier shall either:
>
> 10.2.1 Carry the Passenger on another of its scheduled Passenger services on which space is available; or
>
> 10.2.2 Reroute the Passenger to the destination indicated on the Ticket or applicable portion thereof by its own or another Carrier's scheduled service, or by means of ground transportation. If the sum of the fare, excess Baggage charge, and any applicable service charge for the revised routing is higher than the refund value of the Ticket or applicable portion thereof, the Carrier shall request no additional fare or charge from the Passenger, and shall refund the difference if the fares and charges for the revised routing are lower; or
>
> 10.2.3 Issue a refund accordance with the provisions of Article 11 and shall be under no further liability to the Passenger.

(*Id.* § 10.2). Article 11.1 states that when appropriate, refunds "shall be issued by the Carrier in accordance with this article and the Carrier's Regulations." (*Id.* § 11.1). Article 11.3 further states

that, if Turkish Airlines issues a refund, the amount of the passenger's refund would depend on whether any portion of the Ticket has been used. (*Id.* § 11.3).

Article 2.5 of Turkish Airlines' Conditions of Carriage guarantees compliance with aviation laws:

> In case any provision contained or referred to herein is contrary to anything contained in the applicable convention, and any applicable laws, government regulations, orders, or requirements that cannot be waived by agreement of the parties, such provision shall not apply. The invalidity of any provision shall not affect the validity of any other provision.

(*Id.* § 2.5).

Article 16.3.5 of Turkish Airlines' Conditions of Carriage expressly precludes consequential damages. (*Id.* § 16.3.5). That provision provides, in part, that Turkish Airlines' "liability shall not exceed the amount of proven Damage," and Turkish Airlines "shall furthermore not be liable for indirect or consequential Damages." (*Id.*).

In addition to Turkish Airlines' Conditions of Carriage, when a customer books a ticket through Turkish Airlines' website, the customer must agree to Turkish Airlines' Terms of Use. (Declaration of Steve M. Dollar, dated November 13, 2020 ("Dollar Decl.") Ex. 1).[1] The Terms of Use posted on Turkish Airlines' website state that "[t]he web site and/or phone app is

---

[1]   As set forth below, Turkish Airlines seeks dismissal of Plaintiff Milosevic's claim based on improper venue pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(3). Therefore, this Court may consider the Terms of Use from Turkish Airlines' website on Turkish Airlines' motion to dismiss. *See TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375 (S.D.N.Y. 2010), *aff'd in part*, 647 F.3d 472 (2d Cir.), *and aff'd in part*, 435 F. App'x 31 (2d Cir. 2011) (in deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), "a court may consider evidentiary matters outside the pleadings, by affidavit or otherwise, regarding the existence of jurisdiction") (internal quotations omitted); *see also Fernandez v. Zoni Language Centers, Inc.*, No. 15-CV-6066 (PKC), 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016), *aff'd*, 858 F.3d 45 (2d Cir. 2017) (courts may also take judicial notice of information contained on websites where "the authenticity of the site has not been questioned").

(hereinafter to be referred to as '*Online Channels*') owned and operated by Turkish Airlines" and that "ANY PURCHASES OR OTHER TRANSACTION *YOU* MAKE BY USING *OUR ONLINE CHANNELS* WILL BE SUBJECT TO THESE TERMS OF USE, PLEASE READ THESE TERMS OF USE CAREFULLY BEFORE *YOU* START TO USE *OUR ONLINE CHANNELS*." (*Id.*) (emphasis in original).   In order to complete a transaction, a customer must click a box, which states:  "I have read and accept the terms and conditions,  the general conditions  of carriage for passenger and baggage and the fare rules."  (Dollar Decl. Ex. 2)

The Jurisdiction  section of Turkish Airlines' Terms of Use further states that, by purchasing  a ticket through Turkish Airlines' website, the purchaser agrees to the exclusive jurisdiction  of the Istanbul/Bakırköy  Courts:

> This *Agreement* and *Your* use of *Online Channels* or any *Material* contained  in or accessed or downloaded  from it and any dispute  or claim arising  out of or in connection  with such, shall be governed by, construed and interpreted in accordance with the laws of Turkey and *You* agree to submit  to the exclusive  jurisdiction  of the Istanbul/ Bakırköy  Courts.  *We* reserve the right to bring proceedings  before the courts of the country *You* reside or where *Your* use of the *Online Channels* has taken place.

(Dollar Decl. Ex. 1) (emphasis  in original).

### C.   Plaintiff Sholopa's Allegations

Plaintiff Sholopa  purchased a non-refundable  roundtrip ticket on Turkish Airlines  through Vayama.com ("Vayama"),  a third-party  website. (Cons. Compl. ¶¶ 10, 11, 23).  Plaintiff Sholopa purchased the ticket for her mother, who was scheduled  to travel from New York to Istanbul on May 13, 2020 and from Istanbul to New York on November 5, 2020.  (*Id.* ¶ 23).  Plaintiff  Sholopa paid $695 for her roundtrip  ticket.  (*Id.*).  Plaintiff Sholopa  alleges that, in April 2020, Turkish Airlines  canceled her mother's departing flight from New York to Istanbul because of the COVID-19 pandemic.  (*Id.* ¶¶ 12, 23).  After learning  of the flight  cancellation, Plaintiff Sholopa  alleges

she requested a refund from Turkish Airlines and that Turkish Airlines referred her to Vayama. (*Id.* ¶¶ 13, 23). Plaintiff Sholopa alleges Vayama refused to provide her with a refund. (*Id.* ¶¶ 14, 23). Plaintiff Sholopa contends that she did not receive a full refund prior to bringing her lawsuit on April 27, 2020. (*Id.* ¶ 15). However, Turkish Airlines issued a refund to Plaintiff Sholopa through Vayama on June 22, 2020.

### D.      Plaintiff Milosevic's Allegations

Plaintiff Milosevic purchased a non-refundable ticket directly through Turkish Airlines and was scheduled to travel from Serbia to New York on March 21, 2020. (Cons. Compl. ¶¶ 10, 11, 24). Plaintiff Milosevic alleges that she paid approximately $790 for her ticket. (*Id.* ¶ 24). Plaintiff Milosevic further alleges that Turkish Airlines canceled her flight due to the COVID-19 pandemic. (*Id.* ¶ 12). According to the Consolidated Complaint, Plaintiff Milosevic made "multiple calls" to Turkish Airlines to request a cash refund. (*Id.* ¶ 24). Plaintiff Milosevic claims that Turkish Airlines refused to provide her "with a refund in the amount equal to the fare she paid for her ticket." (*Id.*).

### E.      The Department of Transportation Enforcement Notices

In response to the COVID-19 pandemic, the DOT issued two notices addressed to "the traveling public, and U.S. and foreign carriers, operating at least one aircraft having a seating capacity of 30 or more seats." (Dollar Decl. Ex. 3; Ex. 4).[2] The first DOT notice, published on

---

[2]   As set forth below, Turkish Airlines seeks dismissal of Plaintiffs' sole cause of action for breach of contract for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court may consider the DOT notices on Turkish Airlines' motion to dismiss because the Consolidated Complaint refers to and relies on them to form the basis of Plaintiffs' breach of contract claim. (Cons. Compl. ¶¶ 6, 7, 17, 19, 37); *see also Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (considering terms of agreement on motion to dismiss where complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint, and affirming dismissal of complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)).

April 3, 2020 (the "April DOT Notice"), stated that the Aviation Enforcement Office may pursue an enforcement action against any airline "that provides passengers vouchers for future travel in lieu of refunds for cancelled or significantly delayed flights during the COVID-19 public health emergency." (Dollar Decl. Ex. 3). However, the second DOT notice, published on May 12, 2020 (the "May DOT Notice"), clarified that the DOT's enforcement notices operate merely as "guidance on how regulated entities may comply with existing regulations" and "**do[] not have the force and effect of law and [are] not meant to bind the regulated entities in any way.**" (Dollar Decl. Ex. 4) (emphasis added).

## ARGUMENT

The Court should grant Turkish Airlines' motion to dismiss on several independent grounds. First, Plaintiff Sholopa's claim should be dismissed because Turkish Airlines issued a refund for her ticket through Vayama on June 22, 2020 and therefore Plaintiff Sholopa lacks standing under Article III of the Constitution. Second, the Court should dismiss Plaintiff Milosevic's claim because Plaintiff Milosevic purchased her tickets through Turkish Airlines' website and thereby agreed to Turkish Airlines' Terms of Use, which requires Plaintiff Milosevic to bring any claims or disputes against Turkish Airlines in the courts of Istanbul/Bakırköy. Third, Plaintiffs' claim is preempted by the ADA. Finally, Plaintiffs fail to state a claim on which relief can be granted because Turkish Airlines did not breach its Conditions of Carriage. Plaintiff's Consolidated Complaint should be dismissed.

## I.   PLAINTIFF SHOLOPA LACKS STANDING UNDER ARTICLE III BECAUSE SHE FAILED TO ALLEGE AN INJURY IN FACT

Plaintiff Sholopa's claim should be dismissed for lack of standing. "'It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress.'" *Epstein v. JPMorgan Chase &*

*Co.*, No. 13 CIV. 4744 KPF, 2014 WL 1133567, at *4, *7 (S.D.N.Y. Mar. 21, 2014) (internal quotations omitted) (granting motion to dismiss because Defendants refunded Plaintiff "for all economic damage he incurred as a result of the alleged breach" and thus Plaintiff could not demonstrate "any 'actual' injury to establish standing"). "'If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.'" *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012). "'[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it.'" *Epstein*, 2014 WL 1133567, at *4. Plaintiffs have "the burden of proving by a preponderance of the evidence" that subject matter jurisdiction exists. *Id*. at *5. Moreover, "[t]o proceed on a class-wide basis, an individual plaintiff must allege that he is a member of the asserted class," meaning plaintiff "must possess the same interest and suffer the same injury shared by all members of the class [plaintiff] represents." *Melendez v. ONE Brands, LLC*, No. 18-CV-06650(CBA)(SJB), 2020 WL 1283793, at *2 (E.D.N.Y. Mar. 16, 2020) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)) (granting motion to dismiss).

Plaintiff Sholopa cannot establish standing because she has received a full refund and therefore has not suffered an injury in fact. To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To establish an injury in fact, a plaintiff must show the invasion of a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id*. at 1547-48.

Plaintiff Sholopa claims that she did not receive a refund prior to filing her lawsuit (Cons. Compl. ¶ 15); however, Plaintiff Sholopa fails to mention that Turkish Airlines issued a full refund

through Vayama on June 22, 2020, four months prior to filing the Consolidated Complaint. Plaintiffs' Consolidated Complaint also purports to seek damages including "the cost of cancelled tickets, any cancellation fees, and consequential damages." (*Id.* at 18). But Plaintiff Sholopa has not alleged that she paid, or was denied repayment of, any cancellation fees.[3] Thus, as Plaintiff Sholopa received a full refund for her ticket over four months ago, she lacks standing and her claim must be dismissed.

The Central District of California recently dismissed two cases related to Lufthansa's alleged failure to provide prompt refunds for flights canceled due to the COVID-19 pandemic. In *Maree v. Deutsche Lufstansa AG* and *Castanares v. Deutsche Lufstansa AG*, Plaintiffs received refunds after filing their complaints. *Maree v. Deutsche Lufthansa AG*, No. 8:20-CV-885(MWF)(MRW), 2020 WL 6018806, at *5 (C.D. Cal. Oct. 7, 2020); *Castanares v. Deutsche Lufthansa AG*, No. 20-CV-4261(MWF)(MRW), 2020 WL 6018807, at *4 (C.D. Cal. Oct. 9, 2020). In both cases, the Court reasoned that because plaintiffs had received the relief requested, to meet Article III's case-or-controversy requirement, plaintiffs must establish that they suffered "some other type of actual damage." *Castanares*, 2020 WL 6018807, at *4; *see Maree*, 2020 WL 6018806, at *5. The court therefore granted Lufstansa's motion to dismiss plaintiffs' breach of contract claims because plaintiffs did not allege facts showing they suffered consequential damages. *Castanares*, 2020 WL 6018807, at *4; *Maree*, 2020 WL 6018806, at *5.

In addition, Plaintiff Sholopa lacks standing to represent the putative class because she has not suffered the same injury allegedly shared by the putative class members. In the Consolidated

---

[3] Consequential damages are expressly precluded by Turkish Airlines' Conditions of Carriage (*see* Cons. Compl., Ex. A § 16.3.5), and therefore could not form the basis of a breach of contract claim. *See Maree*, 2020 WL 6018806, at *5 (Plaintiff "may allege other damages, so long as those damages are recoverable under the express terms of the Conditions of Carriage").

Complaint, Plaintiffs define the putative class as "[a]ll persons in the United States who purchased tickets for travel on a Turkish Airlines flight scheduled to operate to, from, or within the United States whose flights were cancelled or were subject to a significant schedule change and ***not refunded***." (Cons. Compl. ¶ 30 (emphasis added)). As Plaintiff Sholopa, who purports to represent a class, cannot establish the requisite case or controversy with Turkish Airlines based on having been "not refunded," she may not seek relief on behalf of herself or any other member of the putative class. *See Melendez*, 2020 WL 1283793, at *2. Plaintiff Sholopa's claim should be dismissed.

## II.   PLAINTIFF MILOSEVIC AGREED TO THE EXCLUSIVE JURISDICTION OF THE ISTANBUL/BAKIRKÖY COURTS

Plaintiff Milosevic's claim should be dismissed because she purchased her non-refundable tickets through Turkish Airlines' website and agreed to the provisions in Turkish Airlines' Terms of Use, which contains a forum selection clause requiring she bring her claim in the Istanbul/Bakırköy courts. Courts in this circuit have considered motions to dismiss in connection with a forum selection clause for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3). *See, e.g.*, *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 327 (S.D.N.Y. 2008) (recognizing there is "no existing mechanism with which forum selection enforcement is a perfect fit" and granting motion to dismiss based on forum selection clause under Federal Rule of Civil Procedure 12(b)(1)) (internal citation omitted); *see also Phillips Audio Active Ltd.*, 494 F.3d 378, 382 (2d Cir. 2007) (affirming motion to dismiss based on forum selection clause under Federal Rule of Civil Procedure 12(b)(3)). In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3), "a court may consider evidentiary matters outside the pleadings, by affidavit or otherwise, regarding the existence of jurisdiction." *TradeComet.com LLC*, 693 F. Supp. 2d at 375 (internal quotations omitted). "The burden on a

plaintiff opposing enforcement of a forum selection clause is similar to that 'imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant.'" *Id.* (quoting *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997)).

This Court should dismiss Plaintiff Milosevic's claim because she agreed to the terms and conditions of Turkish Airlines' website, which state that all claims or disputes arising out of the use of Turkish Airlines' website must be brought in the Istanbul/Bakırköy courts. "To obtain dismissal based on a forum selection clause, the party seeking enforcement of the clause must demonstrate that: (1) the clause was reasonably communicated to the party resisting enforcement, (2) the clause was mandatory and not merely permissive, and (3) the claims and parties involved in the suit are subject to the forum selection clause." *TradeComet.com LLC*, 693 F. Supp. 2d at 376. Plaintiff Milosevic's claim must be dismissed because the forum selection clause in Turkish Airlines' Terms and Conditions was reasonably communicated to Plaintiff Milosevic, the clause was mandatory, and the claims and parties involved in the action are subject to the forum selection clause in Turkish Airlines' Terms and Conditions.

"The Second Circuit 'regularly enforce[s]' forum selection clauses as long as 'the existence of the clause was reasonably communicated to the parties.'" *Id.* at 377 (citing *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006)). "Clickwrap" agreements, which require a user to accept the agreement before the user can proceed, are "reasonably communicated to the user" and are valid and binding contracts. *Id.*; *Valley v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 19-CV-7998 (VEC), 2020 WL 2907676, at *3 (S.D.N.Y. June 3, 2020) ("The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts, 'for the principal reason that the user has affirmatively assented to the terms of the agreement by clicking 'I agree.'"). Plaintiff

Milosevic alleges that she purchased her ticket directly through Turkish Airlines.  (Cons. Compl. ¶ 24).  The first bolded paragraph of Turkish Airlines' Terms of Use states that the use of Turkish Airlines' website will be subject to the conditions in the Terms of Use and prompts Plaintiff to read the terms of use carefully before using Turkish Airlines' website. (Dollar Decl. Ex. 1).  In order to complete her transaction, Plaintiff was required to accept the Terms of Use. (Dollar Decl. Ex. 2).

Turkish Airlines' forum selection clause was also mandatory.  A forum selection clause is mandatory, as opposed to permissive, "when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." *Phillips*, 494 F.3d at 386 (2d Cir. 2007); *see TradeComet.com*, 693 F. Supp. 2d at 378 (determining forum selection clause which required that claims "shall be litigated exclusively in the federal or state courts of Santa Clara County, California" was mandatory and "clearly contain[ed] compulsory language specifying venue"). The jurisdiction section of Turkish Airlines' Terms of Use contained clear compulsory language stating that Plaintiff Milosevic "agree[d] to submit to the exclusive jurisdiction of the Istanbul/Bakırköy Courts." (Dollar Decl. Ex. 1).  Thus, similar to the forum selection clauses in *Philips* and *TradeComet.com*, the forum selection clause that Plaintiff Milosevic agreed to was mandatory.

Finally, Plaintiff Milosevic's allegations fall squarely under the forum selection clause. The forum selection clause governs "any *Material* contained in or accessed or downloaded from [the Turkish Airlines website] and any dispute or claim arising out of or in connection with such." (Dollar Decl. Ex. 1 (emphasis added)).  Because Plaintiff Milosevic purchased her ticket through Turkish Airlines' website, her breach of contract claim is clearly encompassed within the forum selection clause. *See Phillips*, 494 F.3d at 387 ("The contract claim … falls squarely under the

forum selection clause."). Accordingly, Plaintiff Milosevic's Complaint should be dismissed for improper venue because she was required to bring her claim in the Istanbul/Bakırköy courts.

## III.   PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED UNDER RULE 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint's "well-pleaded factual allegations must 'plausibly give rise to an entitlement to relief.'"  *Hekmat v. U.S. Transportation Sec. Admin*, 247 F. Supp. 3d 427, 431 (S.D.N.Y. 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  "A claim has 'facial plausibility' when plaintiffs plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (internal quotations omitted).  Although "the district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiffs' favor," the court "need not accept conclusory allegations as true."  *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft*, 556 U.S. at 678.

### A.   Plaintiffs' Claim Is Preempted by the Airline Deregulation Act

#### 1.   *Plaintiffs' Breach of Contract Claim Is Preempted by the ADA Because It Relates to Turkish Airlines' "Prices" and "Services"*

Plaintiffs' breach of contract claim is expressly preempted under the ADA because such claim relates to Turkish Airlines' "prices" and "services."  Under the ADA, a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier …"  49 U.S.C. § 41713(b)(4)(A); *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378-79 (1992) (the ADA prohibits "the States from enforcing any law relating to rates, routes, or services of any air carrier") (internal quotation marks omitted).  "The Supreme Court has interpreted the ADA's preemption provision broadly, construing the phrase 'related to' as referring to any state action 'having a connection with, or reference to,' an airlines

rates, routes, or services." *Hekmat*, 247 F. Supp. 3d at 431 (citing *Morales*, 504 U.S. at 384); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008) ("[T]he Supreme Court has repeatedly emphasized the breadth of the ADA's preemption provision.").

An airline's ticket refund, cancellation, and reissuance policies relate to an airline's "prices" and "services" and are therefore preempted under the ADA. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775(JG)(VVP), 2008 WL 5958061, at *17 (E.D.N.Y. Sept. 26, 2008), *report and recommendation adopted in part*, No. 06-MD-1775(JG)(VVP), 2009 WL 3443405 (E.D.N.Y. Aug. 21, 2009), *aff'd,* 697 F.3d 154 (2d Cir. 2012) ("Claims arising out of disputes over airlines fares 'relate[ ] to the price of an air carrier.") (citing *Morales*, 504 U.S. at 383); *Martin v. United Airlines, Inc.*, No. 16-CV-1042, 2017 WL 3687347, at *5 (W.D. Okla. Apr. 18, 2017), *aff'd*, 727 F. App'x 459 (10th Cir. 2018) ("There is no dispute that" plaintiffs' breach of contract claims regarding defendant's issuance of money-credits for plaintiffs' non-refundable tickets "relate to defendant's prices and services"); *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 31 (1st Cir. 2007) (plaintiffs' claim that they were unlawfully denied a refund on fees and taxes that had been collected as part of the original nonrefundable ticket price was preempted under the ADA); *Statland v. Am. Airlines, Inc.*, 998 F.2d 539, 542 (7th Cir. 1993) (noting that it was "obvious that canceled ticket refunds relate[d] to rates"); *see also Pena v. British Airways, PLC (UK)*, No. 18-CV-6278(LDH)(RML), 2020 WL 3989055, at *5 (E.D.N.Y. Mar. 30, 2020) ("Breach of contract claims are generally pre-empted by the ADA.").

Plaintiffs allege they were entitled to prompt refunds of their ticket price following Turkish Airlines' suspension of flights due to the COVID-19 pandemic and resulting government travel restrictions. (Cons. Compl. ¶ 17). Such claim directly challenges Turkish Airlines' refund and cancellation polices and therefore relate to Turkish Airlines' "prices" and "services." As

Plaintiffs' claim relates to Turkish Airlines' "prices" and "services," it is preempted under the ADA and should be dismissed.

### 2. *The Narrow Exception in Wolens Does Not Apply to Plaintiffs' Claim*

Plaintiffs' claim does not fall under the narrow exception set out in *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 (1995). In *Wolens*, the Supreme Court carved out an exception to the ADA's preemption clause, holding that a breach of contract claim is not preempted if it arises from "the airline's alleged breach of its own, self-imposed undertakings." *Wolens*, 513 U.S. at 228. However, the *Wolens* exception only applies to breach of contract claims "with no enlargement or enhancement based on state laws or policies external to the agreement." *Id.* at 233; *Pena*, 2020 WL 3989055, at *6 (dismissing plaintiffs' breach of contract claims based on defendant's "Privacy Policy" because "the only contractual agreement between Plaintiff and Defendant … was Defendant's General Conditions of Carriage" and "nothing in the [Conditions of Carriage] or the Privacy Policy evince any intent on the part of Defendant to adopt the statements made in its Privacy Policy as contractual obligations"); *see McGarry v. Delta Air Lines, Inc.*, No. 18-CV-9827(MWF), 2019 WL 2558199, at *5 (C.D. Cal. June 18, 2019), *aff'd*, 812 F. App'x 625 (9th Cir. 2020) (holding that plaintiff's claim was preempted because it did "not seek to hold Defendants to the terms of any agreement they reached directly with Plaintiff").

Most recently, in *Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, No. 5:20-CV-767-JGB-SP, 2020 WL 5625740 (C.D. Cal. Sept. 17, 2020), the Central District of California held that a claim for breach of contract arising out of defendant Norwegian Air's alleged failure to refund plaintiff for a flight canceled as a result of the COVID-19 pandemic was preempted by the ADA. The court reasoned that "only private obligations explicitly agreed to under general principles of contract law can give rise to a valid breach of contract claim related to airline fares." *Id.* at *6.

Under the terms of its Conditions of Carriage, Turkish Airlines did not breach a self-imposed undertaking to provide refunds because Turkish Airlines (1) is not obligated to provide cash refunds for the cost of non-refundable tickets, (2) can satisfy its obligations through other means, and (3) is not obligated to provide refunds within a set time period. *See infra* at III.B.

In an apparent effort to circumvent the Supreme Court's holding in *Wolens*, Plaintiffs rely on the DOT's non-binding notices. Plaintiffs allege that Turkish Airlines was required by the DOT enforcement notices to provide a refund "within in reasonable time" for their canceled flights. (Cons. Compl. ¶¶ 5-7, 17). The DOT notices are not part of Turkish Airlines' Conditions of Carriage and there is no evidence that Turkish Airlines intended to adopt the statements in the DOT notices as contractual obligations. Plaintiffs' reliance on the DOT notices therefore falls squarely within the prohibition enumerated by the Supreme Court in *Wolens*. As the non-binding DOT notices are not part of Turkish Airlines' self-imposed undertaking, the narrow *Wolens* exception does not apply and Plaintiffs cannot avoid preemption of their breach of contract claim.

### B. Plaintiffs' Breach of Contract Claim Should be Dismissed Under Rule 12(b)(6) For Failure to State a Claim

"For a breach of contract claim, Plaintiff must provide specific allegations as to an agreement between the parties, the terms of that agreement, and what provisions of the agreement were breached as a result of the acts at issue." *Hekmat*, 247 F. Supp. 3d at 433 (concluding that Plaintiffs "fail[ed] to identify any provision that was breached" and dismissing Plaintiff's breach of contract claim); *see Hughes v. Southwest Airlines Co.*, 961 F.3d 986, 989 (7th Cir. 2020) ("Southwest's cancellation of [Plaintiff's] flight is not itself a breach of the Contract, because the contract provided alternative means for Southwest to fulfill its duties").

### 1.     *Turkish Airlines did not Breach its Conditions of Carriage*

To assist its customers during this extraordinary time, Turkish Airlines has adopted a policy to allow passengers who purchased a ticket before March 20, 2020 for travel through December 31, 2020 to make changes to tickets with zero change fees and to issue refunds requested for tickets purchased for flights canceled because of the COVID-19 pandemic.  Under the clear terms of Turkish Airlines' Conditions of Carriage, however, Turkish Airlines had no obligation to provide a cash refund for the cost of the non-refundable tickets purchased by Plaintiffs.  "It is a fundamental contracts principle that a 'court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case.'"  *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 537 F. Supp. 2d 546, 552 (S.D.N.Y.), *aff'd*, 572 F. 3d 76 (2d Cir. 2009).   Article 3.1.5 of Turkish Airlines' Conditions of Carriage explicitly states that non-refundable tickets "may include restrictions on various reservation alterations and non-refundability of discounted tickets."  (Cons. Compl., Ex. A § 3.1.5; *see also* § 11.1 (when appropriate, refunds "shall be issued by the Carrier in accordance with this article and the Carrier's Regulations," including fare regulations that impose non-refundability)).   The Conditions of Carriage did not require Turkish Airlines to provide Plaintiffs with a cash refund for their nonrefundable tickets.  Thus, pursuant to the terms of Turkish Airlines' Conditions of Carriage, Turkish Airlines had no obligation to issue refunds to Plaintiffs for their suspended flights, and as a result, Plaintiffs' claim should be dismissed.

In the Consolidated Complaint, Plaintiffs ignore the express language of Article 3.1.5 of Turkish Airlines' Conditions of Carriage in asserting that Article 11 requires Turkish Airlines to provide a refund for Plaintiffs' non-refundable tickets.  In interpreting a contract, "'words and phrases … should be given their plain meaning,' and the contract 'should be construed so as to

give full meaning and effect to all of its provisions.'" *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotations omitted). "'[A]n interpretation of a contract [that] 'has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible.'" *Id.* (internal quotations omitted). Article 3.1.5 distinguishes between refundable and non-refundable tickets by placing restrictions on reservation alterations and the non-refundability of discounted tickets. (Cons. Compl., Ex. A § 3.1.5). Had Turkish Airlines intended to contract to provide refunds for all ticket types, Turkish Airlines would not have included a provision governing non-refundable fares.

Because Turkish Airlines allows passengers who purchased a ticket before March 20, 2020 for travel through December 31, 2020 to make changes to tickets without incurring any change fees, it meets its obligations under the Conditions of Carriage. Plaintiffs misread Turkish Airlines' Conditions of Carriage in alleging that Turkish Airlines' Conditions of Carriage "requires Turkish Airlines to issue refunds to Plaintiffs and other passengers whose flights were cancelled." (Cons. Compl. ¶ 4). Article 10.2 of Turkish Airlines' Conditions of Carriage provides that, if Turkish Airlines cancels or delays a flight due to circumstances beyond its control, Turkish Airlines "shall ***either*** … [c]arry the Passenger on another of its scheduled Passenger services on which space is available; ***or*** … [r]eroute the Passenger to the destination indicated on the Ticket or applicable portion thereof by its own or another Carrier's scheduled service, or by means of ground transportation ... ***or*** … [i]ssue a refund in accordance with the provisions of Article 11." (Cons. Compl., Ex. A § 10.2 (emphasis added)). The use of the disjunctive "or" provides a party with separate and distinct options and the party need only satisfy one option. *See Cordell v. McGraw-Hill Companies, Inc.*, No. 12 CIV. 0637 ALC RLE, 2012 WL 5264844, at *3 (S.D.N.Y. Oct. 23, 2012), *aff'd*, 525 F. App'x 22 (2d Cir. 2013) (plaintiff "misunderstands the disjunctive clause

which gives [defendant] the option of remitting royalties for sales to its internal division"); *see Hughes*, 961 F.3d at 989 ("[T]he Contract allows Southwest to fulfill its duties to [plaintiff] by placing him on an alternate flight *or* refunding his fare.") (emphasis added).  By allowing passengers who purchased a ticket before March 20, 2020 for travel through December 31, 2020 to make changes to tickets without fees, Turkish Airlines has satisfied its obligations under the Conditions of Carriage.

In addition, there is no obligation in Turkish Airlines' Conditions of Carriage that requires Turkish Airlines to provide refunds within a specified time period. (Cons. Compl., Ex. A). Thus, as Turkish Airlines did not breach the clear terms of its Conditions of Carriage, Plaintiffs' claim must be dismissed.

### 2. *Plaintiffs Cannot Rely on the Non-Binding DOT Notices to Support Their Breach of Contract Claim*

Plaintiffs' reliance on the DOT enforcement notices to argue that Turkish Airlines must promptly refund passengers for canceled flights is misplaced.  No authority exists to support Plaintiffs' contention that mere non-binding guidance from the DOT can displace or re-write Turkish Airlines' Conditions of Carriage.  *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (agency regulation on its own cannot create a private right of action); *Kalick v. Northwest Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010) (no private right of action to enforce airline's violation of Department of Transportation regulations concerning compensation of passengers bumped from oversold flights); *Mapp-Leslie v. Norwegian Airlines*, No. 19-CV-7142 (PKC), 2020 WL 264919, at *2 (E.D.N.Y. Jan. 17, 2020) (no private right of action to enforce Department of Transportation regulations concerning treatment of disabled passengers). In fact, in its May DOT Notice, the DOT clarified that its April DOT Notice—in which it stated that an airline could face an enforcement action if it does not offer a refund to passengers whose flights were canceled or

significantly changed, regardless of whether the airline was at fault for the cancellation or delay—
"**does not have the force and effect of law** and is not meant to bind the regulated entities in any
way." (Dollar Decl. Ex. 4 (emphasis added)).

Moreover, in several recent decisions, which, like the instant case, involved a claim for
breach of contract arising out of defendant's alleged failure to refund plaintiff for a flight canceled
as a result of the COVID-19 pandemic, courts have held that the airline's Conditions of Carriage
did not, as alleged by plaintiff, incorporate the DOT regulations. *See Norwegian Air*, 2020 WL
5625740, at *3; *see also Maree*, 2020 WL 6018806, at *4 ("The Court agrees with Lufthansa that
the DOT regulations relied upon by Plaintiff are not incorporated into Lufthansa's Conditions of
Carriage."); *Castanares*, 2020 WL 6018807, at *4 (same). In *Norwegian Air*, the court observed
that "[m]ultiple federal courts have addressed whether similar language in airfare contracts
incorporates federal regulations" and "nearly all have answered the question in the negative." 2020
WL 5625740, at *3. The court thus held:

> The Court agrees with the vast majority of its sister courts and holds
> that boilerplate contractual language guaranteeing compliance
> international or domestic aviation laws does not incorporate
> extraneous law into the terms of an airfare contract. Instead, only
> language explicit enough to reflect an intent to be affirmatively
> bound by a specific aviation law or regulation is sufficient to result
> in incorporation.

*Id*. at *4. The broad boilerplate language in Article 2.5 of Turkish Airlines' Conditions of Carriage,
which guarantees compliance with aviation laws, is similarly "far too generalized and non-specific
to incorporate the identified DOT regulations." *Id*. at *5.

Plaintiffs' breach of contract claim must also be dismissed because the non-binding DOT
notices do not create a private right of action. There is no basis to conclude that the DOT or 49
U.S.C. § 41712, the statute the DOT notices are purportedly based on, provides for a private right
of action. *See Synovus Bank of Tampa Bay v. Valley Nat'l Bank*, 487 F. Supp. 2d 360, 366

(S.D.N.Y. 2007) ("There is no basis to conclude that Congress or the DOT intended to create either a private right or a private remedy."); *Giuffre v. Delta Air Lines, Inc.*, No. 10-CV-1462 DLI MDG, 2012 WL 3988981, at *3 (E.D.N.Y. Sept. 11, 2012) ("49 U.S.C. § 41712 prohibits certain deceptive practices by airlines and grants the Secretary of Transportation power to investigate such practices and bring an action to stop them, but it does not provide for a private right of action."). As Plaintiffs do not have the authority to enforce DOT regulations, Plaintiffs cannot rely on the DOT notices to support their breach of contract claim, and it should be dismissed.

## CONCLUSION

For the foregoing reasons, Turkish Airlines respectfully requests that the Court grant its Motion to Dismiss with prejudice and grant all such other relief as it deems just and proper.

Dated: New York, New York
        November 13, 2020

NORTON ROSE FULBRIGHT US LLP

By: /s/ Steve M. Dollar
    Steve M. Dollar
    David B. Schwartz
    Sonia H. Lee
    M. Hannah Koseki
1301 Avenue of the Americas
New York, New York 10019
Tel.:    (212) 318-3000
Fax.:   (212) 318-3400
steve.dollar@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com
sonia.lee@nortonrosefulbright.com
hannah.koseki@nortonrosefulbright.com

*Attorneys for Defendants Türk Hava Yollari A.O.
and Turkish Airlines, Inc.*