**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SVETLANA SHOLOPA and MILICA
MILOSEVIC, on behalf of themselves and all
others similarly situated,

                Plaintiffs,

    v.

TURK HAVA YOLLARI A.O. (d/b/a Turkish
Airlines, a foreign corporation), and TURKISH
AIRLINES, INC., a New York Corporation

              Defendants.

Case No. 1:20-cv-03294-ALC

Hon. Andrew L. Carter

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Dated: December 20, 2022

**BURSOR & FISHER, P.A.**
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:   (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Yeremey O. Krivoshey (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ykrivoshey@bursor.com

**LIDDLE SHEETS COULSON P.C.**
Nicholas A. Coulson (*Pro Hac Vice*)
975 E. Jefferson Avenue
Detroit, Michigan 48207
Telephone: (313) 392-0015
Facsimile: (313) 392-0025
Email: ncoulson@lsccounsel.com

*Proposed Class Counsel*

## <u>TABLE OF CONTENTS</u>

**PAGE(S)**

INTRODUCTION ................................................................................................................ 1

THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS........................... 3

TERMS OF THE SETTLEMENT ...................................................................................... 4

    I.       Class Definition ................................................................................... 4

    II.     Monetary Relief ................................................................................... 5

          A.     Refunded Claimants ................................................................ 5

          B.     Nonrefunded Claimants .......................................................... 5

    III.    Release ................................................................................................. 6

    IV.   Notice And Administration Expenses ................................................. 6

    V.     Incentive Awards ................................................................................ 6

    VI.   Attorneys' Fees And Expenses .......................................................... 7

ARGUMENT ...................................................................................................................... 7

    I.       PRELIMINARY APPROVAL OF THE SETTLEMENT IS
           APPROPRIATE.............................................................................. 7

          A.     The *Grinnell* Factors .............................................................. 9

                  1.     Litigation Through Trial Would Be Complex,
                         Costly, And Long (*Grinnell* Factor 1) .............................. 9

                  2.     The Reaction Of The Class (*Grinnell* Factor 2)............... 11

                  3.     Discovery Has Advanced Far Enough To Allow
                         The Parties To Responsibly Resolve The Case
                         (*Grinnell* Factor 3) ........................................................ 11

                  4.     Plaintiffs Would Face Real Risks If The Case
                         Proceeded, And Establishing A Class And
                         Maintaining It Through Trial Would Not Be Simple
                         (*Grinnell* Factors 4, 5, And 6)....................................... 12

                  5.     Defendant's Ability To Withstand A Greater
                           Judgment (*Grinnell* Factor 7)......................................... 13

                  6.     The Settlement Amount Is Reasonable In Light Of
                         The Possible Recovery And The Attendant Risks Of
                         Litigation (*Grinnell* Factors 8 And 9).............................. 13

          B.     The Rule 23(e)(2) Factors ...................................................... 14

                  1.     The Class Representatives And Class Counsel Have
                           Adequately Represented The Class (Rule
                         23(e)(2)(A)................................................................... 14

                  2.     The Settlement Was Negotiated At Arm's Length .......................... 15

i

        3.       The Settlement Provides Adequate Relief To The Class .................................................................................. 15

        4.       The Settlement Treats All Class Members Equally ........................ 17

II.      CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE .................................................................. 18

    A.     The Proposed Settlement Class Meets the Requirements of Rule 23(a) .................................................................. 18

        1.       Numerosity .................................................................. 18

        2.       Commonality ............................................................... 19

        3.       Typicality ..................................................................... 20

        4.       Adequacy ..................................................................... 20

    B.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) ............................................................ 21

        1.       Predominance .............................................................. 21

        2.       Superiority ................................................................... 22

III.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .................................................................. 23

IV.    THE PROPOSED NOTICE PLAN SHOULD BE APPROVED ........................... 23

    A.     The Content Of The Proposed Class Notice Complies With Rule 23(c)(2) ........................................................... 23

    B.     The Plan For Distribution Of The Class Notice Will Comply With Rule 23(c)(2) ......................................... 24

CONCLUSION ................................................................................................. 25

## **TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................................. 22

*Beckman v. KeyBank*,
    293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................ 11, 12

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) ....................................................................................... 22

*Buffington v. Progressive Advanced Ins. Co.*,
    342 F.R.D. 66 (S.D.N.Y. 2022) .................................................................................. 20, 22

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ....................................................................................... 8, 9, 12, 13

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ................................................................................ 20

*Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*,
    2020 WL 5625740 (C.D. Cal. Sep. 17, 2020) ............................................................ 1

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ................................................................................ 20, 21

*Ferrick v. Spotify USA Inc.*,
    2018 WL 2324076 (S.D.N.Y. May 22, 2018) ............................................................. 16

*Fleisher v. Phoenix Life Ins. Co.*,
    2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ............................................................ 17

*Flores v. CGI Inc.*,
    2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ........................................................... 12

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ............................................................................... 8

*George v. Shamrock Saloon II, LLC*,
    2021 WL 3188314 (S.D.N.Y. July 28, 2021) ............................................................. 24

*Gilliam v. Addicts Rehab. Ctr. Fund*,
    2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .............................................................. 13

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
    328 F.R.D. 35 (W.D.N.Y. 2018) ................................................................................. 10

*Hill v. County of Montgomery,*
  2020 WL 5531542 (N.D.N.Y. Sept. 14, 2020) ....................................................... 22

*Holick v. Cellular Sales of New York, LLC,*
  2022 WL 3265133 (N.D.N.Y. July 25, 2022) ..................................................... 7, 8

*In re AXA Equitable Life Ins. Co. COI Litig.,*
  2020 WL 4694172 (S.D.N.Y. Aug. 13, 2020) ......................................................... 19

*In re GSE Bonds Antitrust Litig.,*
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ............................................................. 15, 17

*In re Nigeria Charter Flights Contract Litig.,*
  233 F.R.D. 297 (E.D.N.Y. 2006) ................................................................ 19, 22, 23

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,*
  330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................... 14, 16, 17, 18

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.,*
  2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ......................................................... 9

*In re Warner Chilcott Ltd. Sec. Litig.,*
  2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ....................................................... 11

*Jara v. Felidia Restaurant, Inc.,*
  2018 WL 11225741 (S.D.N.Y. Aug. 20, 2018) ........................................... 7, 8, 15, 24

*Johnson v. Nextel Commc'ns Inc.,*
  780 F.3d 128 (2d Cir. 2015) .............................................................................. 19

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP,*
  333 F.R.D. 314 (S.D.N.Y. 2019) ......................................................................... 9

*Lowe v. NBT Bank, N.A.,*
  2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022) ............................................... passim

*Maree v. Deutsche Lufthansa AG,*
  2021 WL 267853 (C.D. Cal. Jan 26, 2021) ........................................................... 1

*Masters v. Wilhelmina Model Agency, Inc.,*
  473 F.3d 423 (2d Cir. 2007) ............................................................................ 13

*McKnight v. Uber Techs., Inc.,*
  2017 WL 3427985 (N.D. Cal. Aug. 7, 2017) ........................................................ 21

*McLaughlin v. IDT Energy,*
  2018 WL 3642627 (E.D.N.Y. July 30, 2018) ....................................................... 10

*Pacheco ex rel. Ophthotech Corp. v. Guyer*
  2022 WL 16647755 (S.D.N.Y. 2022) ................................................................... 8

*Pearlstein v. BlackBerry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)............................................................ 9, 11, 12

*Peoples v. Annucci*,
   180 F. Supp. 3d 294 (S.D.N.Y. 2016)............................................................................... 8

*Philemon v. Aries Capital Partners, Inc.*,
   2019 WL 13224983 (E.D.N.Y. July 1, 2019)............................................................. 13, 21, 22

*Retta v. Millennium Prods., Inc.*,
   2017 WL 5479637 (C.D. Cal. Aug. 22, 2017)................................................................... 16

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)........................................................................................ 21

*Shames v. Hertz Corp.*,
   2012 WL 5392159 (S.D. Cal. Nov. 5, 2012).................................................................... 16

*TBK Partners, Ltd. v. Western Union Corp.*,
   517 F. Supp. 380 (S.D.N.Y. 1981) ............................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................................................. 19

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005).......................................................................................... 7, 8

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008)............................................................................. 8

**STATUTES**

28 U.S.C. § 1715 .......................................................................................................... 25

**RULES**

Fed. R. Civ. P. 23 ............................................................................................... 23, 24, 25

Fed. R. Civ. P. 23(a) ....................................................................................... 18, 19, 20, 21

Fed. R. Civ. P. 23(b)(3)....................................................................................... 2, 18, 21, 22

Fed. R. Civ. P. 23(c) .............................................................................................. 23, 24

Fed. R. Civ. P. 23(e) ............................................................................................... 9, 14

Fed. R. Civ. P. 23(g) ................................................................................................... 23

Fed. R. Civ. P. 26(f).................................................................................................... 3

**OTHER AUTHORITIES**

ALBA CONTE & HERBERT B. NEWBERG,
  NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002) ........................................................... 7, 8

Plaintiffs Svetlana Sholopa and Milica Molosevic ("Plaintiffs"), by and through Class

Counsel,[1] respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary

Approval of Class Action Settlement.  The Settlement Agreement ("Settlement") and its exhibits

are attached as Exhibit 1 to the Declaration of Yeremey O. Krivoshey ("Krivoshey Decl.").

## INTRODUCTION

When the COVID-19 pandemic forced mass cancellations of flight, virtually every

domestic and international airline was sued over the airline's failure to provide customers with

refunds for cancelled flights, or their failure to do so in a reasonable or timely manner.

Defendants Turk Hava Yollari A.O. (d/b/a Turkish Airlines) and Turkish Airlines, Inc.

("Turkish") were swept up in this wave of litigation, with Plaintiffs alleging that Turkish failed

to refund its passengers.  *See generally* Consolidated Class Action Complaint ("CCAC").  These

lawsuits were met with minimal success.  Many did not make it off the tarmac.  *See*, *e.g.*,

*Daversa-Evdyriadis v. Norwegian Air Shuttle ASA*, 2020 WL 5625740, at *6 (C.D. Cal. Sep. 17,

2020) (MTD granted).  Others survived the pleadings in part but were trimmed to focus only on

interest damages stemming from the delay in issuing refunds (as opposed to full refunds).  *See*,

*e.g.*, *Maree v. Deutsche Lufthansa AG*, 2021 WL 267853 (C.D. Cal. Jan 26, 2021) (allowing only

claims related to failure to issue a refund within a reasonable time).  And, two and a half years

later, only one has resulted in a class action settlement that has been granted preliminary or final

approval.  *Ide v. British Airways PLC*, Case No. 1:20-cv-3542, ECF No. 131 (S.D.N.Y. Nov. 18,

2022).

In light of this backdrop, Class Counsel has secured tremendous relief for Settlement

Class Members.  Settlements Class Members *that have already received a refund* for their flights

---

[1] All capitalized terms not otherwise defined herein shall have the same definitions as set out in the settlement agreement.  *See* Krivoshey Decl., Ex. 1.

may elect to receive $10 in cash or a $45 voucher that can be used on any Turkish flight. Settlement ¶ III.A. The $10 cash payments and $45 vouchers are capped at $1 million. *Id*. § III.B. Settlement Class Members who have not to date received a refund from Turkish may submit a claim for a *full* refund, *plus* one percent of their unused ticket price, or in the case of partially used tickets, one percent (1%) of the price of the unused flight segment. *Id*. ¶ III.D.2. $13,011,083.92 remains due and owing to these Settlement Class Members, in addition to $130,119.84 in interest under the Settlement, for a total of $13,141,194.76. *See* Krivoshey Decl. ¶ 12. The availability of the full refunds plus interest is not capped in the Settlement, and any attorneys' fees and costs, incentive awards, and notice and administration costs are to be paid separately and in addition to the relief to the Refunded and Nonrefunded Claimants. Settlement ¶ III.C.1-4. Thus, the Settlement makes roughly $14.1 million in benefits available to Class Members, with any awards of attorneys' fees and costs, incentive awards, and notice and administration costs as additional benefits to be paid on top. Krivoshey Decl. ¶ 14.

The Court should have no hesitation finding that the Settlement falls within the range of possible approval. Settlement Class Members are set to receive virtually all, if not more, of what they could hope to achieve at trial. Accordingly, Plaintiffs respectfully request that the Court (i) grant preliminary approval of the Settlement; (ii) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (iii) appoint Bursor & Fisher, P.A. and Liddle Sheets Coulson P.C. as Class Counsel; (iv) appoint Svetlana Sholopa and Milica Milosevic as the Class Representatives for the Settlement Class; and (5) approve the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice"), attached as Exhibits B-D to the Settlement, and direct distribution of the Proposed Notice.

**THE LITIGATION HISTORY AND SETTLEMENT NEGOTIATIONS**

On April 27, 2020, Plaintiff Sholopa filed a putative class action against Turkish for, *inter alia*, breach of contract, alleging that Turkish failed to refund Plaintiff Sholopa and similarly situated passengers for her cancelled flight in violation of Turkish's General Conditions of Carriage ("GCC") (ECF No. 1).  A day later, Plaintiff Milosevic filed a putative class action against Turkish alleging the same claims.  *Milosevic v. Turk Hava Yollari A.O., Inc., et al.*, Case No. 1:20-cv-03328, ECF No. 1 (S.D.N.Y. Apr. 28, 2020).  On May 20, 2020, Plaintiff Sholopa filed a Notice of Related Case stating that the instant action was related to Plaintiff Milosevic's action (ECF No. 6).  On June 29, 2020, this Court deemed the two cases to be related, and on October 23, 2020, Plaintiffs filed a Consolidated Class Action Complaint ("CCAC") against Turkish (ECF No. 37).  On November 13, 2020, Turkish filed a Motion to Dismiss the CCAC (ECF No. 38).  Briefing on this motion was completed on January 7, 2021 (ECF Nos. 43, 44).  On March 31, 2022, the Court denied Turkish's Motion to Dismiss in its entirety (ECF No. 57).  The Court thereafter set a status conference for April 12, 2022 (ECF No. 58).

On April 8, 2022, in preparation for the status conference, counsel for the Parties met and conferred pursuant to Fed. R. Civ. P. 26(f).  Krivoshey Decl. ¶ 8.  During this call, the Parties discussed interest in a classwide resolution of this action.  *Id.*  At the status conference, the Parties informed the Court that they intended to pursue settlement negotiations with the assistance of a private mediator.  *Id.*; *see also* ECF No. 60.  On August 9, 2022, the Parties attended a full-day mediation with the Hon. Wayne R. Andersen (Ret.) of JAMS Chicago.  Krivoshey Decl. ¶ 9.  In advance of the mediation, the Parties prepared mediation statements that were provided to Judge Andersen.  *Id.*  The Parties also exchanged information relevant to their claims and defenses, including (i) the number of passengers whose flights had been cancelled by Turkish as a result of the COVID-19 pandemic, (ii) the amount of money that Turkish had

refunded in either cash or vouchers for flights that were cancelled as a result of the COVID-19 pandemic, (iii) the amount of money Turkish had not refunded for flights that were cancelled as a result of the COVID-19 pandemic, (iv) the amount of money in vouchers that had been claimed by passengers whose flights were refunded, and (v) Plaintiffs' attempts to contact Turkish to request a refund. *Id.* ¶ 10. This is largely the same information that would have been produced had the case proceeded to formal discovery. *Id.* Accordingly, the Parties were sufficiently informed at the time of the mediation of the strengths and weaknesses of their respective positions, the size of the putative class, and the damages at issue to negotiate a reasonable settlement. *Id.*

While the Parties did not completely resolve the matter at the mediation, the Parties continued to negotiate a settlement in good faith and with the assistance of Judge Andersen. Krivoshey Decl. ¶ 11. By the end of September 2022, the Parties had come to an agreement on all material terms, and executed a term sheet for a nationwide class settlement on November 3, 2022. *Id.*

**TERMS OF THE SETTLEMENT**

**I.    CLASS DEFINITION**

The "Settlement Class" or "Settlement Class Members" are defined as:

> all United States residents who purchased tickets for travel on a Turkish flight scheduled to operate to, from, or within the United States between the Class Period (a) whose flights were cancelled by Turkish, (b) the customer did not cancel the flight or fail to show for the first leg of the flight prior to the cancellation of a later leg, (c) the customer did not request and receive a voucher or rebooking from Turkish, and (d) the customer did not request and receive a charge back from their credit card provider for the full amount of the flight cancelled by Turkish.[2]

---

[2] Excluded from the Settlement Class are all persons who validly opt out of the Settlement in a timely manner; governmental entities; counsel of record (and their respective law firms) for the Parties; Turkish and any of its affiliates, subsidiaries, and all of its respective employees, officers, and directors; the presiding judge in the Litigation or judicial officer presiding over the matter, and all of their immediate families and judicial staff; and any natural person or entity that

Settlement ¶ I.DD.

## II.   MONETARY RELIEF

### A.   Refunded Claimants

For those Settlement Class Members who have received refunds from Turkish for Qualified Flights (the "Refunded Claimants"), they shall have the option to submit a Claim Form providing for either (i) the Cash Option: $10 per person; or (ii) the Voucher Option: a Voucher for future travel in the amount of $45 USD.  Settlement ¶ III.A.  The Vouchers will consist of a credit code that can be redeemed upon booking any published fare.  To redeem the Vouchers, Settlement Class Members must book tickets through Turkish's website.  The Vouchers are not freely transferable, cannot be sold, expire within twenty-four (24) months of issuance, and cannot be redeemed for cash.  *Id.* ¶ I.II.  Valid Claims for Refunded Claimants are subject to a $1 million Settlement Cap.  *Id.* ¶ III.B.  In the event that Valid Claims for Cash Options or Voucher Options exceed the Settlement Cap, the amount paid for Valid Claims for Cash Options or Voucher Options shall be reduced *pro rata* such that the entire $1 million Settlement Cap is exhausted.  *Id*.

### B.   Nonrefunded Claimants

For those Settlement Class Members who have not received a refund for Qualified Flights, but are entitled to a refund (the "Nonrefunded Claimants"), the Settlement provides:

1.   Turkish will notify Nonrefunded Claimants in the class notice that they are eligible to receive a full refund of the purchase price, plus one percent (1%) of the unused ticket price, or in the case of partially used tickets, one percent (1%) of the price of the unused flight segment, and that they can indicate their desire to request a refund on the Claim Form; *and*

2.   Upon submission of a Valid Claim, Turkish will (i) process their refund, *and* (ii) make an additional Interest Payment of one percent (1%) of the

---

entered into a release with Turkish prior to the Effective Date concerning the Released Claims in the Litigation.

unused ticket price, or in the case of partially used tickets, one percent (1%) of the price of the unused flight segment.

Settlement ¶ III.D.  The total value of this portion of the Settlement is $13,141,194.76.

Krivoshey Decl. ¶ 12.  The Valid Claims of Nonrefunded Claimants are not subject to the

Settlement Cap, and shall not be capped in any way by the Settlement.  Settlement ¶ III.C.1.

## III.   RELEASE

In exchange for the relief described above, Turkish and each of its related affiliated

entities, as well as all "Released Parties" as defined in Settlement ¶ I.AA, will receive a full

release of all claims arising out of, relating to, or in connection with, the defense, settlement or

resolution of the Litigation, including any claims related to any assertion that Turkish wrongfully

did not refund its customers' flights that were cancelled by Turkish.  Nothing in the Settlement

Agreement or Release releases any claims for personal injuries.  *See* Settlement ¶¶ I.Y-BB, VII

for full release language.

## IV.   NOTICE AND ADMINISTRATION EXPENSES

Turkish shall pay all Claims Administration Expenses, which includes sending the Class

Notice set forth in the Settlement and any other notice as required by the Court, as well as all

costs of administering the Settlement.  Settlement ¶ I.E; *see also id.* ¶ V.A-B.  Claims

Administration Expenses shall be paid in addition to, and separate from, any awards paid to

Settlement Class Members, and shall not derogate in any way from any relief due to the

Settlement Class.  *Id.* ¶ III.C.4.

## V.   INCENTIVE AWARDS

In recognition for their efforts on behalf of the Settlement Class, Turkish has agreed that

Plaintiffs Sholopa and Milosevic may receive, subject to Court approval, incentive awards of

$3,500 each as appropriate compensation for their time and effort serving as Class

Representatives and as parties to the Litigation.  Settlement ¶ IX.H.  Any incentive awards shall

be paid by Turkish in addition to, and separate from, any awards paid to Settlement Class Members, and shall not derogate in any way from any relief due to the Settlement Class.  *Id.*

## VI.    ATTORNEYS' FEES AND EXPENSES

Subject to approval by the Court, Turkish has agreed to pay Class Counsel reasonable attorneys' fees and to reimburse expenses in this action.  Settlement ¶ IX.A.  Class Counsel has agreed to petition the Court for no more than nine-hundred thousand dollars and zero cents ($900,000).  *Id.*  Any attorneys' fees, costs, and expenses shall be paid by Turkish in addition to, and separate from, any awards paid to Settlement Class Members, and shall not derogate in any way from any relief due to the Settlement Class.  *Id.* ¶ IX.B.

## ARGUMENT

## I.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"Preliminary approval is the first step in the settlement process. It allows notice to be provided and affords interested parties the opportunity to comment on or object to the settlement."  *Holick v. Cellular Sales of New York, LLC*, 2022 WL 3265133, at *2 (N.D.N.Y. July 25, 2022) (cleaned up).  "Following notice, the Court can hold a hearing, receive input on the proposed settlement, and make a final judgment as to the propriety and fairness of the settlement."  *Id.* (cleaned up).

There is a "strong judicial policy in favor of settlements, particularly in the class action context."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").  "Courts have discretion regarding the approval of a proposed class action settlement."  *Jara v. Felidia Restaurant, Inc.*, 2018 WL 11225741, at *1 (S.D.N.Y. Aug. 20, 2018) (Carter, J.).  "In exercising this discretion, courts should give weight to the parties' consensual decision to settle

class action cases because they and their counsel are in unique positions to assess potential risks." *Id*. "Due to the presumption in favor of settlement, absent fraud or collusion, courts should be hesitant to substitute their judgment for that of the parties who negotiated the settlement." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 307 (S.D.N.Y. 2016) (cleaned up).

"Preliminary approval of a settlement agreement requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Holick*, 2022 WL 3265133, at *2. "To grant preliminary approval, a court need only find probable cause to submit the settlement proposal to class members." *Pacheco*, 2022 WL 16647755, at *1 (cleaned up). "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members. NEWBERG § 11.25. "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008) (same).

In evaluating a class action settlement, courts in the Second Circuit consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a

greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Courts should also consider the "four enumerated factors in the new [Federal Rule of Civil Procedure] Rule 23(e)(2), in addition to the nine *Grinnell* factors." *Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 420 (S.D.N.Y. 2019). The Rule 23(e) factors are whether:  (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). "There is significant overlap between the Rule 23(e)(2) and *Grinnell* factors, which complement, rather than displace each other." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 2019 WL 6875472, at *14 (E.D.N.Y. Dec. 16, 2019) ("*In re Payment Card II*").

###   A.      The *Grinnell* Factors

####        1.      Litigation Through Trial Would Be Complex, Costly, And Long (*Grinnell* Factor 1)

"[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022). As such, courts have consistently held that unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain

results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982).

As discussed above, Plaintiffs prevailed on Turkish's Motion to Dismiss, and the Parties have engaged in informal discovery that involved largely the same information that would have been produced in formal discovery related to issues of class certification and summary judgment. Krivoshey Decl. ¶¶ 7, 10.  The next steps in the litigation would presumably have been depositions of the Parties, substantial electronically stored information discovery, and contested motions for summary judgment and class certification, which would be costly and time-consuming for the Parties and the Court and create a risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all.  *McLaughlin v. IDT Energy*, 2018 WL 3642627, at *10 (E.D.N.Y. July 30, 2018) (finding the first *Grinnell* factor weighed in favor of settlement approval where "the parties would likely need to brief motions for class certification, summary judgment, and potentially proceed to trial").  Indeed, this is one of the few actions against airlines stemming from COVID-19-related flight cancellations to get off the ground unscathed (*i.e.*, without a complete dismissal or a reduction in damages from full refunds to interest on the delay in issuing a refund).  Krivoshey Decl. ¶ 17; *see also* Introduction, *supra*.  Thus, while Plaintiffs are confident in the merits of this case, there is no guarantee that they will safely land the proverbial plane.  Krivoshey Decl. ¶¶ 17-18.  Moreover, "[e]ven assuming that plaintiffs were successful in defeating any pretrial motions filed by defendants, and were able to establish defendants' liability at trial, there is always the potential for an appeal, which would inevitably produce delay."  *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 55 (W.D.N.Y. 2018) (internal quotations omitted).

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class.  It provides $13.1 million worth of *full*

*refunds plus interest* to Nonrefunded Claimants—money that would otherwise have remained in Turkish's possession forever and has been lost to these Settlement Class Members for over two years—and provides $1 million in additional relief to Settlement Class Members who were already refunded.  Settlement ¶ III.  This *Grinnell* factor weighs in favor of preliminary approval.

### 2.    The Reaction Of The Class (*Grinnell* Factor 2)

"Since no notice has been sent, consideration of this factor is premature."  *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008).  Plaintiffs are unaware of any opposition to the Settlement.

### 3.    Discovery Has Advanced Far Enough To Allow The Parties To Responsibly Resolve The Case (*Grinnell* Factor 3)

"This factor asks[] whether … counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement."  *Pearlstein*, 2022 WL 4554858, at *4 (cleaned up).  As discussed above, Plaintiffs defeated Turkish's Motion to Dismiss, and the Parties conducted informal discovery that involved largely the same information that would have been produced in formal discovery related to issues of class certification and summary judgment. Krivoshey Decl. ¶¶ 7, 10.  Both sides have also prepared mediation statements setting forth their relevant positions and participated "in a day-long mediation allowed them to further explore the claims and defenses."  *Beckman v. KeyBank*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013); *see also* Krivoshey Decl. ¶ 9.  Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides, confirms that "Plaintiffs obtained sufficient discovery to weigh the strengths and weaknesses of their claims and to accurately estimate the damages at issue." *Beckman*, 293 F.R.D. at 475.

4.      **Plaintiffs Would Face Real Risks If The Case Proceeded, And Establishing A Class And Maintaining It Through Trial Would Not Be Simple (*Grinnell* Factors 4, 5, And 6)**

"Courts generally consider the fourth, fifth, and sixth Grinnell factors together." *Pearlstein*, 2022 WL 4554858, at *5 (internal quotations omitted).  In weighing the risks of certifying a class and establishing liability and damages, "the Court is not required to decide the merits of the case, resolve unsettled legal questions, or to foresee with absolute certainty the outcome of the case."  *Lowe v. NBT Bank, N.A.*, 2022 WL 4621433, at *8 (N.D.N.Y. Sept. 30, 2022) (cleaned up).  "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement."  *Flores v. CGI Inc.*, 2022 WL 13804077, at *7 (S.D.N.Y. Oct. 21, 2022) (internal quotations omitted).

"Here, while Plaintiffs and Class Counsel believe that they would prevail on their claims asserted against [Turkish], they also recognize the risks and uncertainties inherent in pursuing the action through class certification, summary judgment, trial, and appeal."  *Lowe*, 2022 WL 4621433, at *8.  In particular, Plaintiffs would face "[t]he risk of obtaining … class certification and maintaining [it] through trial," which "would likely require extensive discovery and briefing."  *Beckman*, 293 F.R.D. at 475.  Indeed, in presiding over another COVID-19 airline cancellation case, a judge opined that the case presented real issues at class certification and "has failure written all over it."  *Bugarin v. All Nippon Airways Co.*, Case No. 5:20-cv-3341-BLF, Hearing Transcript at 8:4-7 (N.D. Cal. Aug. 8, 2021) (Krivoshey Decl. Ex. 4).  And "[e]ven assuming that the Court granted certification, there is always the risk of decertification after the close of discovery."  *Lowe*, 2022 WL 4621433, at *8; *see also Flores*, 2022 WL 13804077, at *8 ("The risks attendant to certifying a class and defending any decertification motion supports approval of the settlement.").  Approval of the Settlement obviates the "[r]isk, expense, and

delay" of further litigation, and these *Grinnell* factors thus support preliminary approval.  *Lowe*, 2022 WL 4621433, at *8.

### 5.  Defendant's Ability To Withstand A Greater Judgment (*Grinnell* Factor 7)

While Turkish could likely withstand a greater judgment, "this factor standing alone does not mean that the settlement is unfair."  *Philemon v. Aries Capital Partners, Inc.*, 2019 WL 13224983, at *12 (E.D.N.Y. July 1, 2019).

### 6.  The Settlement Amount Is Reasonable In Light Of The Possible Recovery And The Attendant Risks Of Litigation (*Grinnell* Factors 8 And 9)

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."  *Philemon*, 2019 WL 13224983, at *12.  Instead, "[w]hen the proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable."  *Id*.  Moreover, when a settlement assures immediate payment of substantial amounts to Settlement Class Members and does not "sacrific[e] speculative payment of a hypothetically larger amount years down the road," the settlement is reasonable.  *See Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, *5 (S.D.N.Y. Mar. 24, 2008) (cleaned up).

In the Second Circuit, courts are required to calculate the value of a Settlement in terms of the amount of relief *made available* to Settlement Class Members, as opposed to the amount that may actually be claimed.  *Cf. Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (basing award of attorneys' fees on "the total funds made available, whether claimed or not" because "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.").  To that end, Class Counsel has made $14.1 million in value available to Settlement Class Members.  Krivoshey Decl. ¶¶ 12, 14.  The

13

Settlement provides for a full refund plus 1% of the unused ticket price to Nonrefunded Claimants (Settlement ¶ III.D), which meets if not exceeds what these Settlement Class Members would have procured at trial (full refunds).[3]  Thus, this portion of the settlement—$13.1 million—represents at least 100% of Turkish's potential exposure at trial.  Krivoshey Decl. ¶ 12.

The Settlement also provides up to $1 million in Cash ($10) or Voucher ($45) Options for Refunded Claimants.  Settlement ¶ III.A.  Assuming that Refunded Claimants would receive 1% of their ticket price—which, again, is a reasonable interest rate—based on Turkish's failure to issue refunds within a "reasonable time," this portion of the Settlement represents an 80% recovery even with the Settlement Cap.  Krivoshey Decl. ¶ 13.  Further, although the interest rate for Refunded Claimants could conceivably be higher, these Settlement Class Members would also face significant risk at class certification in determining what is a "reasonable time" on a classwide basis.  *Id.* ¶ 17.  Weighing the benefits of the Settlement against the risks associated with proceeding in litigation and in collecting on any judgment, therefore, the $14.1 million Settlement is more than reasonable.

**B.    The Rule 23(e)(2) Factors**

**1.    The Class Representatives And Class Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)**

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 30 (E.D.N.Y. 2019) ("*In re Payment Card I*") (internal quotations omitted).  Here, "plaintiffs' interests are aligned with other class

---

[3] A 1% interest rate is more than reasonable amount.  For instance, from the time period of March 2020 through February 2022, the federal funds rate was less than 1% the entire time. FEDERAL FUNDS EFFECTIVE RATE, https://fred.stlouisfed.org/series/FEDFUNDS.

members' interests because they suffered the same injuries": failing to be refunded by Turkish for a cancelled flight prior to the initiation of this lawsuit, and failing to be refunded within a reasonable time in any event. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). "Because of these injuries, plaintiffs have an interest in vigorously pursuing the claims of the class." *Id.* (internal quotations omitted). Further, courts have previously found that Plaintiffs' attorneys adequately meet the obligations and responsibilities of Class Counsel. Krivoshey Decl. Exs. 2-3 (Firm Resumes of Class Counsel).

## 2. The Settlement Was Negotiated At Arm's Length

"If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 693 (internal quotations omitted). Further, "[a] settlement like this one, reached with the help of a third-party neutral, enjoys a presumption that the settlement achieved meets the requirements of due process." *Jara*, 2018 WL 11225741, at *2 (cleaned up). Here, both counsel for Plaintiffs and for Turkish are experienced in class action litigation. Krivoshey Decl. ¶¶ 15, 18. Moreover, the Parties participated in a mediation before Judge Andersen and engaged in protracted settlement discussions. *Id.* ¶¶ 9-11.

## 3. The Settlement Provides Adequate Relief To The Class

Whether relief is adequate takes into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(2)(C)(i-iv).

***"The costs, risks, and delay of trial and appeal."***  This factor "subsumes several *Grinnell* factors … including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial.  *In re Payment Card I*, 330 F.R.D. at 36.  As noted above, the Settlement has met each of these *Grinnell* factors.  Argument §§ I.A.1, 4, *supra*.

***"The effectiveness of any proposed method of distributing relief to the class."***
Settlement Class Members need only submit a simple claim form to receive significant relief.  This is a reasonable method of distributing relief to Settlement Class Members, especially given that Settlement Class Members normally have to submit a refund request to Turkish outside of litigation.  *See Ferrick v. Spotify USA Inc.*, 2018 WL 2324076, at *8 (S.D.N.Y. May 22, 2018) ("[R]equiring class members to submit copyright registration numbers is reasonable because plaintiffs would have to provide that information to pursue their own copyright infringement action.").  Further, as to Refunded Claimants, a claims process is necessary to give these Class Members the option to choose between the Cash Option and the Voucher Option.  *Shames v. Hertz Corp.*, 2012 WL 5392159, at *12 (S.D. Cal. Nov. 5, 2012) ("[T]he actual intent of the claims process is to allow class members the opportunity to choose between several payment options.  The parties would otherwise have no way of knowing whether a particular class member wants to receive the cash option or the rental voucher.") (cleaned up).  In addition, even in claims-made settlements, Class Counsel has orchestrated notice plans that have exhausted the available Settlement benefits.  *See*, *e.g.*, *Retta v. Millennium Prods., Inc.*, 2017 WL 5479637, at *3 (C.D. Cal. Aug. 22, 2017) (in claims made deal with no direct notice, entire $8.25 million cap "exhausted" and "not one dollar of the $8.25 million will revert to Defendants"); *Bayol v. Health-Ade LLC*, Case No. 3:18-cv-1462, ECF No. 55, at 1:15-19 (claims made settlement in which entire $3,997,500 fund was "exhaust[ed]").

***"The terms of any proposed award of attorneys' fees."***  Class Counsel has agreed to petition the Court for no more than nine-hundred thousand dollars ($900,000). Settlement ¶ IX.A.  This is approximately 6.4% of the $14.1 million in value that Class Counsel has made available, which is more than reasonable.  *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *16 (S.D.N.Y. Sept. 9, 2015) ("[T]he requested fee represents less than 10% of the total gross value of the Settlement, which is *far below* the mainstream of percentage awards in this Circuit.") (emphasis in original).  Class Counsel's fees are also being paid separately from and in addition to any relief due to Settlement Class Members and will therefore not derogate in any way from the relief provided for.  Settlement ¶ IX.B.

***"Any agreement required to be identified by Rule 23(e)(3)."***  This factor requires identification of "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 696.  No such agreement exists other than the Settlement.

### 4.    The Settlement Treats All Class Members Equally

This Rule 23(e)(2) factor discusses "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *In re Payment Card I*, 330 F.R.D. at 47.  Here, the Settlement both accounts for the differences between Class Members and treats them equally.  On the one hand, Refunded Claimants are naturally not entitled to a full refund because Turkish has already provided them one.  This accounts for the differences among the claims of the Settlement Class Members.  On the other hand, the relief provided for effectively puts all Settlement Class Members in the same place. Nonrefunded Claimants will be able to procure a effectively 101% refund of their unused ticket price.  Meanwhile, Refunded Claimants will be able to procure up to $1 million in Cash or Voucher Options—which is equal to roughly 1% of the total amount owed to Refunded

Claimants in interest (Argument § I.A.6, *supra*; *see also* Krivoshey Decl. ¶ 13)—on top of the refund Turkish has already provided them.  As a result, each Settlement Class Member that submits a claim will effectively have received a full refund of their unused ticket price plus 1% interest, and therefore be at an equal place relative to one another.

## II.   CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied."  *In re Payment Card I*, 330 F.R.D. at 50.  Fed. R. Civ. P. 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As relevant here, Fed. R. Civ. P. 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### A.   The Proposed Settlement Class Meets the Requirements of Rule 23(a)

#### 1.   Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the Settlement Class includes approximately 340,000 persons: approximately 300,000 Refunded Claimants and approximately 40,000

Nonrefunded Claimants.  Krivoshey Decl. ¶¶ 12-13.  Numerosity is therefore met.  *Lowe*, 2022 WL 4621433, at *4 ("Numerosity is presumed at a level of 40 members.") (cleaned up).

### 2.     Commonality

Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).  "Although the claims need not be identical, they must share common questions of fact or law."  *Lowe*, 2022 WL 4621433, at *4.  Instead, "Rule 23(a)(2) simply requires that there be issues whose resolution will affect all or a significant number of the putative class members."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (cleaned up).  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  *Id.* (cleaned up)

Here, Plaintiffs allege that Turkish breached its GCC by failing to refund passengers at all or within a reasonable time for flights that Turkish cancelled.  CCAC ¶¶ 17-21, 23-24, 44-47.  Resolution of this common question requires evaluation of the interpretation of a single contract.  If Defendant violated its GCC, then every Settlement Class Members' rights have been violated in the exact same manner, and damages can be precisely calculated for each Settlement Class Member.  Thus, the commonality requirement is satisfied.  *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 300 (E.D.N.Y. 2006) ("*In re Nigeria*") ("Plaintiffs allege that the relevant terms and conditions of the tickets of prospective class members and plaintiffs are identical, as are the issues relating to World's alleged failure to abide by its obligations.  These allegations satisfy Rule 23(a)(2)'s commonality requirement."); *In re AXA Equitable Life Ins. Co. COI Litig.*, 2020 WL 4694172, at *7 (S.D.N.Y. Aug. 13, 2020) (certifying breach of contract class where class members' "contracts with AXA are identical in all material respects").

### 3.     Typicality

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "Minor variations in the fact patterns underlying individual claims do not preclude a finding of typicality when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 72 (S.D.N.Y. 2022) (cleaned up).  Here, "[P]laintiffs' and other class members' claims ar[o]se out of the same course of conduct by the defendant and [were] based on the same legal theories": Turkish's failure to issue a refund for cancelled flights in violation of its GCC.  *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014); *see also* CCAC ¶¶ 23-24.  Accordingly, typicality is satisfied.

### 4.     Adequacy

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation."  *Lowe*, 2022 WL 4621433, at *5 (internal quotations omitted).  Here, Plaintiffs—like each and every one of the Settlement Class Members—were passengers on a flight that Turkish cancelled as a result of the COVID-19 pandemic, and who were not issued a refund prior to the commencement of this lawsuit or within a reasonable time after the cancellation.  CCAC ¶¶ 23-24.  "The fact that [P]laintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class." *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008).

Likewise, proposed Class Counsel is more than qualified to represent the Settlement Class.  "Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer

claims … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008." *Ebin*, 297 F.R.D. at 566 (Rakoff, J.); *see also* Krivoshey Decl. Ex. 2 (Firm Resume of Bursor & Fisher, P.A.).  Similarly, Liddle Sheets Coulson P.C. and its lawyers have been appointed class counsel in numerous cases.  *See*, *e.g.*, *McKnight v. Uber Techs., Inc.*, 2017 WL 3427985, at *8 (N.D. Cal. Aug. 7, 2017) (appointing Nicholas Coulson as Class Counsel); *see also* Krivoshey Decl. Ex. 3 (Firm Resume of Liddle Sheets Coulson P.C.).  Both firms have also devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, aggressively pursuing those claims, defeating a motion to dismiss, conducting informal discovery, participating in a private mediation with Judge Andersen, and ultimately, negotiating a favorable class action settlement.  Krivoshey Decl. ¶¶ 3-11.  In sum, proposed Class Counsel has vigorously prosecuted this action and will continue to do so throughout its pendency.  *Id.*

## B. The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

### 1. Predominance

"Under Rule 23(b)(3), a proposed class must be sufficiently cohesive and common issues must predominate in order to warrant adjudication as a class." *Philemon*, 2019 WL 13224983, at *9.  "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal quotations omitted).  "Satisfaction of Rule 23(a) [as Plaintiffs have done here] goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." *Lowe*, 2022 WL 4621433, at *6 (cleaned up).

"[T]here is widespread agreement that certification under Rule 23(b)(3) is warranted for claims that involve contracts that, like here, contain the same or essentially the same terms." *Buffington*, 342 F.R.D. at 74 (internal citations omitted); *see also In re Nigeria*, 233 F.R.D. at 304 (predominance met where "plaintiffs' claims do not rely on individualized representations, but rather on a uniform deceptive course of conduct by World Airways … that was directed at all ticket purchasers"). These common questions include but are not limited to: (i) whether Turkish breached its GCC; (ii) whether Defendant failed to refund passengers at all or within a "reasonable time"; and (iii) the amount of damages stemming from the breach." *See also* CCAC ¶ 37. Predominance is therefore met.

## 2.    Superiority

Under Rule 23(b)(3)'s superiority requirement, Plaintiffs must demonstrate that a "class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Philemon*, 2019 WL 13224983, at *9 (citing *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)). Fed. R. Civ. P. 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.[4]

Here, "a class action is far superior to requiring the claims to be tried individually given the relatively small awards that each Settlement Class [M]ember is otherwise entitled." *Lowe*, 2022 WL 4621433, at *6. Further, "litigating this matter as a class action will conserve judicial

---

[4] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Hill v. County of Montgomery*, 2020 WL 5531542, at *4 (N.D.N.Y. Sept. 14, 2020) ("Whether the case would be manageable as a class action at trial is not of consequence here in the context of a proposed settlement.").

resources and is more efficient for the Settlement Class [M]embers, particularly those who lack the resources to bring their claims individually." *Id.*  Thus, a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement class members' claims, while "the prohibitive cost of proceeding individually against [Turkish] and the likely unavailability of contingency-fee counsel far outweigh any interest the plaintiffs have in proceeding individually." *In re Nigeria*, 233 F.R.D. at 306.

## III.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court considers proposed Class Counsel's:  (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer class actions in general.  Krivoshey Decl. ¶¶ 15; Krivoshey Decl. Exs. 2-3 (Firm Resumes of Bursor & Fisher, P.A. and Liddle Sheets Coulson P.C.).  And as a result of their zealous efforts in this case, proposed Class Counsel has secured substantial monetary relief to the Settlement Class Members.  Thus, the Court should appoint Bursor & Fisher, P.A. and Liddle Sheets Coulson P.C. as Class Counsel.

## IV.   THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

### A.   The Content Of The Proposed Class Notice Complies With Rule 23(c)(2)

For notice to be satisfactory, the notice must provide:

the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must concisely and clearly state in plain, easily understood language: the nature of the

> action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  "Class notice need only describe the terms of the settlement generally, which is a minimal requirement." *George v. Shamrock Saloon II, LLC*, 2021 WL 3188314, at *7 (S.D.N.Y. July 28, 2021) (cleaned up).

Here, the Notice provides detailed information about the Settlement, including: (i) a comprehensive summary of its terms; (ii) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and incentive awards for the Class Representatives; and (iii) detailed information about the Released Claims.  Settlement Exhibits B-D.  In addition, the Notice provides information about the Fairness Hearing date, the right of Class Members to seek exclusion from the Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information. *Id.*

In short, the Notice fully informs Settlement Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.  This information is adequate to put Class Members on notice of the proposed Settlement and is well within the requirements of Fed. R. Civ. P. 23(c)(2)(B).  *George*, 2021 WL 3188314, at *7 (approving substantially similar notice form and collecting cases that have done the same); *Jara*, 2018 WL 11225741, at *4 ("The Proposed Notice is also appropriate because it describes the terms of the settlement, informs the classes about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing.").

**B.     The Plan For Distribution Of The Class Notice Will Comply With Rule 23(c)(2)**

The Parties have agreed upon a notice plan that easily satisfies the requirements of both Fed. R. Civ. P. 23 and Due Process.  Upon Preliminary Approval of the Settlement, the

Settlement Claims Administrator will send direct notice to all Settlement Class Members by e-mail for whom Turkish has such information, and notice via U.S. Mail for all Settlement Class Members for whom Turkish does not have an e-mail address on file or if an e-mail is returned as undeliverable.  Settlement ¶ V.B.2-3.  In addition, the Settlement Claims Administrator will establish a Settlement Website that shall contain all salient Settlement documents, as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online.  *Id.* ¶ V.B.4.  The Settlement Claims Administrator will also establish a toll-free telephone number for Settlement Class Members to call and receive pre-recorded answers to questions regarding this Settlement, as well as an email address to handle Settlement Class Members' inquiries.  *Id.* ¶ V.B.5.  Finally, Turkish will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  *Id*. ¶ V.B.6.  In sum, the proposed methods for providing notice to the Class comports with both Fed. R. Civ. P. 23 and Due Process, and thus, should be approved by the Court.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of the Settlement.  A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement, attached to the Settlement as Exhibits B-D, and is submitted herewith as Exhibit E to the Settlement.

Dated: December 20, 2022                    Respectfully submitted,

                                            By: */s/ Max S. Roberts*
                                                  Max S. Roberts

                                            **BURSOR & FISHER, P.A.**
                                            Max S. Roberts
                                            888 Seventh Avenue
                                            New York, NY 10019
                                            Telephone:  (646) 837-7150

Facsimile:   (212) 989-9163
Email: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Yeremey O. Krivoshey (*Pro Hac Vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ykrivoshey@bursor.com

**LIDDLE SHEETS COULSON P.C.**
Nicholas A. Coulson (*Pro Hac Vice*)
975 E. Jefferson Avenue
Detroit, Michigan 48207
Telephone: (313) 392-0015
Facsimile:  (313) 392-0025
Email: ncoulson@lsccounsel.com

*Proposed Class Counsel*